Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE UTUADO
PANEL X

| | | |
|---|---|---|
| ELVIS ANTONIO OTERO CONCEPCIÓN<br><br>EX PARTE<br><br>Peticionario | KLAN202301082 | *Apelación* acogida como ***Certiorari*** procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.: UT2023CV00412<br><br>Sobre:<br>Petición de Orden – Eliminación de Antecedentes Penales, Petición de Orden – Eliminación de Registros de Ofensores Sexuales |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 6 de febrero de 2024.

El 1 de diciembre de 2023, compareció ante este Tribunal de Apelaciones el señor Elvis Alberto Otero Concepción (en adelante, parte peticionaria o señor Otero Concepción), por medio de recurso de *Apelación,* el cual se acoge como un recurso de *Certiorari* por ser lo procedente en derecho[1]. Mediante este, nos solicita que revisemos la *Resolución* emitida el 15 de octubre de 2023 y notificada el 16 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Utuado. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la petición presentada por la parte peticionaria para que se eliminara su nombre del Registro de Ofensores Sexuales y Abuso Contra Menores de Puerto Rico.

---

[1] No obstante, mantenemos inalterada su identificación alfanumérica por motivos de economía procesal.

Número Identificador

SEN2024 _____

Por los fundamentos que expondremos a continuación, se expide el recurso de *certiorari* y se confirma la *Resolución* recurrida.

**I**

De acuerdo surge del expediente ante nuestra consideración, el señor Otero Concepción fue sentenciado el 15 de agosto de 2003, a dieciocho (18) años de reclusión en una institución carcelaria, por haber cometido los delitos de violación y de tentativa de incesto (dos casos) del Código Penal de Puerto Rico de 1974, por actos cometidos en contra de una persona menor de edad. Posteriormente, le concedieron a la parte peticionaria la Libertad Bajo Palabra y fue inscrito en el Registro de Ofensores Sexuales y Abuso Contra Menores de Puerto Rico (en adelante, Registro de Ofensores Sexuales), conforme a las disposiciones de la Ley Núm. 266-2004, *infra*. Para el 13 de julio de 2012, el señor Otero Concepción completó la totalidad de su sentencia.

Para el 12 de septiembre de 2023, la parte apelante presentó una *Petición*. Por medio de esta, le solicitó al foro de primera instancia que se eliminara su nombre del Registro de Ofensores Sexuales y Abuso contra Menores de Puerto Rico. Alegó que, habían transcurrido diez (10) años desde la fecha en que cumplió la *Sentencia*, que no había sido convicto de ningún otro delito y que gozaba de buena reputación en su comunidad de residencia. Asimismo, solicitó que se eliminara de su récord de antecedentes penales los delitos por los cuales fue sentenciado.

Subsiguientemente, el 13 de septiembre de 2023, el Tribunal de Primera Instancia emitió una *Orden*, donde le concedió veinte (20) días al Ministerio Público para exponer su posición respecto a la *Petición*. De igual manera, dispuso lo siguiente:

> Ahora bien, de la petición surge que la parte peticionaria está solicitando, además de la eliminación del récord de antecedentes penales, que se le excluya del Registro de Ofensores Sexuales. En ese sentido, muestre causa la parte peticionaria por lo cual el

Tribunal no deba denegar dicha petición tomando en consideración que bajo la Ley 226-2004, según enmendada por la Ley 243-2011 y subsiguientes, los delitos de incesto y violación (incluyendo ambos delitos en modo de tentativa) deben permanecer de por vida en el Registro de Ofensores Sexuales por ser considerada la persona convicta como un Ofensor Sexual Tipo III. Véase el Art. 2 inciso (10) de la Ley 266-2004, según enmendada por la Ley 243-2011, 4 LPRA sec. 536, y el Art. 5 de la Ley 266-2004, según enmendada, 4 LPRA sec. 536c. Ello sin perderse de vista que conforme al caso de *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019) se determinó que las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley 266-2004, aplican retroactivamente y entre esas enmiendas se encuentra el haber cambiado el término de 10 años requerido previamente a las personas convictas para que permanecieran en el Registro de Ofensores Sexuales. **Se le concede el mismo término de 20 días a la parte peticionaria para que presente la mostración de causa**.

Así las cosas, el 25 de septiembre de 2023, el Pueblo de Puerto Rico, representado por el Ministerio Público (en adelante, parte recurrida o Ministerio Público) presentó la *Moción en Oposición a Solicitud de Orden de Eliminación Registro Ofensores y Eliminación de Antecedentes Penales*. Mediante la aludida moción, el Ministerio Público acotó que, respeto a la solicitud de la eliminación del Registro de Ofensores Sexuales, entendía que no cumplía con lo establecido en la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011. Lo anterior, debido a que, el Art. 2 inciso 10 de la Ley Núm. 266-2004, según enmendada, define a un Ofensor Sexual Tipo III como aquellas "personas que resulten convictas por los siguientes delitos o su tentativa: (i) Violación; seducción; sodomía; actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99, 101, 103, 105, 122, 137-A(a) y 160, respectivamente, de la Ley Núm. 155 de 22 de julio de 1974, según enmendada; y agresión sexual conyugal, según tipificada en el Artículo 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada". Indicó además, que, el Art. 5 de la precitada ley, disponía que el ofensor

sexual deberá mantenerse inscrito en el Registro de Ofensores Sexuales y cumplir con los requisitos establecidos en la misma de por vida, si el convicto es un Ofensor Sexual Tipo III. Por otro lado, adujo que, respecto a la solicitud de eliminación de récord, bajo su criterio, el señor Otero Concepción no cumplía con los requisitos establecidos en el Art. 4 de la Ley Núm. 314-2004, según enmendada, conocida como la "Ley de Certificados de Antecedentes Penales". A estos efectos, le solicitó al foro de primera instancia que denegara la *Petición* presentada por la parte peticionaria.

Posteriormente, la parte peticionaria presentó la *Moción Informativa al Expediente del Tribunal en Cumplimiento de Orden*. Por medio de esta, argumentó que, el Ministerio Público debió exponer por qué en el caso particular del señor Otero Concepción se debía denegar su petición y no limitar su razonamiento a que es un Ofensor Sexual Tipo III. Arguyó que, no existía razón que justificara la denegatoria de la petición de la parte peticionaria. Finalmente solicitó al Tribunal de Primera Instancia que declarara Ha Lugar su *Petición*.

La primera instancia judicial emitió la *Resolución* cuya revisión nos atiene, el 15 de octubre de 2023, mediante la cual declaró No Ha Lugar la *Petición* presentada por la parte peticionaria. El foro *a quo* razonó que, el estado de derecho actual le imponía aplicar retroactivamente las enmiendas incorporadas a la Ley Núm. 266-2004, *infra*, mediante la Ley Núm. 243-2011, *infra*. Consecuentemente, determinó que, debido a que el señor Otero Concepción era considerado como un Ofensor Sexual Tipo III debía permanecer de por vida inscrito en el Registro de Ofensores Sexuales.

Inconforme con tal determinación, el 30 de octubre de 2023, el señor Otero Concepción presentó la *Moción Solicitando Reconsideración al Amparo de la Regla 47 de Procedimiento Civil*, la

cual fue declarada No Ha Lugar por el Tribunal de Primera Instancia mediante *Resolución* emitida el 1 de noviembre de 2023.

Aun insatisfecha, la parte peticionaria acudió ante este foro revisor mediante recurso de *Apelación* y realizó los siguientes señalamientos de error:

- Primer Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala Superior de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario apelante a nivel de instancia sin haber celebrado vista y negando al peticionario su día en corte.

- Segundo Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de instancia violentando las protecciones constitucionales federales contra las protecciones contra castigos ex post facto, castigos crueles e inusitados, y la violación a la intimidad del peticionario apelante de epígrafe

- Tercer Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de instancia haciendo caso omiso a su deber ministerial que [h]a sido impuesto a nuestros tribunales de proteger sus derechos, el debido proceso de Ley que les cobija y los derechos constitucionales que les resguardan unas garantías que deben ser inviolables, sin importar el delito cometido.

- Cuarto Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de instancia determinando que la aplicación retroactiva de las disposiciones de la Ley 243-2011 son compulsorias cuando del mismo cuerpo de la Ley 243 de 2011 se desprende que el legislador concedió la discreción para la aplicación retroactivamente de las disposiciones de la Ley Número 243-2011.

- Quinto Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de instancia al no tomar en consideración en su determinación que precisamente el fin de la Ley 243-2011 es el evitar la reincidencia.

- Sexto Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de

instancia al determinar contrario a la intención legislativa de que la implementación de dicha Ley no es uno de carácter punitivo imponiendo o un castigo adicional para una clase particular de ofensor.

- Séptimo Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de instancia al implementar una Ley de manera contraria a la intención que tuvo el Legislador cuando expresó que dicha Ley no era una de carácter punitivo, convirtiéndola precisamente en eso al no hacer uso de la discreción que le fuera concedida por el Legislador a nuestros jueces.

- Octavo Error:
  Erró manifiestamente el Tribunal de Primera Instancia, Sala de Utuado, al declarar No Ha Lugar la petición presentada por el peticionario a nivel de instancia violentando el mandato constitucional de la rehabilitación de la persona que ha cometido un delito.

Por su parte, el 2 de enero de 2024, compareció ante este foro revisor, la parte recurrida mediante *Escrito en Cumplimiento de Orden.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver el recurso ante nuestra consideración.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas".

*Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

### B. Ley Núm. 266 de 9 de septiembre de 2004

Conforme a la política pública y el deber del Estado de proteger a la ciudadanía y a las víctimas de delitos sexuales, la Asamblea Legislativa creó un Sistema de Registro de Personas Convictas por Delitos Sexuales y de Abuso Contra Menores en virtud de la derogada Ley Núm. 28-1997. El referido estatuto fue aprobado con el fin de cumplir con la ley federal *Jacob Watterling Crimes Against Children and Sexually Violent Offender Registration Program*, 42 USC secs. 14071 *et seq.*, que requería a los estados y a Puerto Rico, adoptar legislación dirigida a que las personas convictas por ciertos delitos de naturaleza sexual y abuso contra menores de edad, tuvieran que inscribirse en un registro público por un término de por lo menos diez (10) años. *Exposición de Motivos*, Ley Núm. 28-1997; *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 981-982 (2019). El propósito del Registro, de acuerdo a la ley federal y estatal, no era punitivo, sino, un medio para garantizar la seguridad, protección y bienestar general. De esta manera, el registro procuraba mantener informadas a las autoridades gubernamentales y a la ciudadanía sobre el paradero de las personas convictas de delitos sexuales violentos o abuso contra menores, luego de que estas se reintegraran a la comunidad. *Exposición de Motivos*, Ley Núm. 28-1997; Art. 1 de la Ley Núm. 28-1997; *Pueblo v. Ferrer Maldonado*, supra, pág. 982.

Subsiguientemente, la Ley Núm. 28-1997, fue derogada al aprobarse la *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*, Ley Núm. 266 de 9 de septiembre de 2004, según enmendada. Esta Ley, mantiene el enfoque respecto a que su propósito no es punitivo, sino, un medio por el cual el Estado puede velar por la seguridad, protección y bienestar general de aquellos sectores más vulnerables y merecedores de protección de nuestra ciudadanía. Art. 1 de la Ley Núm. 266-2004. Previo a las enmiendas incorporadas por la Ley Núm. 243-2011, el Art. 5 de

la Ley Núm. 266-2004, *supra*, disponía que la información de la persona convicta por la comisión de los delitos enumerados en el Artículo 3(a) de dicha ley[2], se mantendría en el Registro por un período mínimo de diez (10) años desde que cumplió la sentencia impuesta. Art. 3 de la Ley Núm. 266-2004, *supra*; *Pueblo v. Ferrer Maldonado*, supra, pág. 983.

Posteriormente, con el propósito de atemperar la Ley Núm. 266-2004, *supra*, a la ley federal *Adam Walsh Child Protection and Safety Act of 2006*, también conocida como *Sex Offender Registration and Notification Act* (SORNA), 42 USC secs. 16901 *et seq.*, la Asamblea Legislativa aprobó la Ley Núm. 243 de 14 de diciembre de 2011. Entre las enmiendas incorporadas se encuentra la creación de tres (3) clasificaciones para los ofensores sexuales de acuerdo con el delito sexual cometido, a saber: Ofensor Sexual Tipo I, Ofensor Sexual Tipo II y Ofensor Sexual Tipo III. *Pueblo v. Ferrer Maldonado*, supra, pág. 984. Estas clasificaciones conllevan diferentes términos específicos para que el ofensor sexual permanezca en el Registro, según la gravedad de los delitos. El tiempo en que un ofensor sexual deberá permanecer en el Registro es el siguiente: Ofensor Sexual Tipo I, 15 años; Ofensor Sexual Tipo II, 25 años; y Ofensor Sexual Tipo III, de por vida. Art. 5 de la Ley Núm. 266-2004, *supra*; *Pueblo v. Ferrer Maldonado*, supra, pág. 984-985.

---

[2] El Art. 3 de la Ley Núm. 243-2011, *supra*, disponía que serán registradas en el Registro: (a) las personas que resulten convictas por alguno de los siguientes delitos o su tentativa: violación, seducción, sodomía, actos lascivos o impúdicos; proxenetismo, rufianismo o comercio de personas cuando la víctima fuere menor de dieciocho (18) años y el delito agravado; delito contra la protección a menores, incesto, restricción de libertad cuando la víctima fuere menor de dieciséis (16) años y no fuere su hijo, secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía; maltrato agravado de un menor y agresión sexual conyugal, comprendidos en los Artículos 99, 101, 103, 105, 110(a) y (c) y 111, 115, 122, 13l(e), 137A(a), 160 y 163(e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada, y en los Artículos 3.2(g) y 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, y el delito de maltrato a menores establecido en los Artículos 52 y 53 de la Ley Número 177 de 1 de agosto de 2003, respectivamente.

Respecto a la retroactividad de las enmiendas incorporadas, la propia ley dispone que, salvo los incisos (f) y (g) del Art. 4, todas las otras disposiciones podrán tener efecto retroactivo. Art. 15 de la Ley Núm. 243-2011; *Pueblo v. Ferrer Maldonado*, supra, pág. 985. Por otro lado, en *Pueblo v. Ferrer Maldonado*, supra, nuestra Máxima Curia determinó que, por disposición expresa de la Asamblea Legislativa, la Ley Núm. 266-2004, es una ley civil, no penal y de carácter no punitivo. Conforme a ello, la aludida ley no cualifica bajo ninguno de los cuatro (4) tipos de estatutos que se consideran contrarios a nuestra cláusula constitucional *ex post facto*.[3] Para sustentar dicho planteamiento, en el precitado caso, el Tribunal Supremo decidió aplicar el análisis propuesto por el Tribunal Supremo de Estados Unidos en *Smith v. Doe*, 538 US 84 (2003) como sigue:

> Primeramente, en nuestra jurisdicción, el requisito de inscribirse en el Registro, desde la primera ley aprobada, no se ha considerado como una actuación de índole punitiva por parte del Estado. Aunque aparenta tener un propósito disuasivo, su finalidad siempre ha sido, al igual que en otras jurisdicciones estadounidenses y a nivel federal, *informar* al público y *servir* como un medio por el cual el Estado pueda velar por *la seguridad, protección y bienestar general.* Tampoco estamos ante una "medida de seguridad", según los parámetros del Art. 91 del Código Penal; así lo aclaramos en *Pueblo v. Hernández García.*

> En segundo lugar, nuestro ordenamiento no impone una incapacidad o restricción afirmativa alguna más allá de la obligación de inscribirse en el Registro y los trámites que conlleva actualizar la información allí contenida. La necesidad de proveer la dirección residencial de la persona obligada a inscribirse en el Registro *no tiene efectos semejantes*, ni tan siquiera cercanos, a la pena de encarcelamiento o alguno de los mecanismos de sentencia diferida.[17]

> En tercer lugar, esta ley aplica a una conducta ya considerada como un delito de abuso sexual; es decir, no penaliza una nueva conducta criminal. Al contrario, solo reconoce aquellas conductas ya estatuidas que la sociedad puertorriqueña, a través de la Asamblea Legislativa, considera reprochables y merecedoras de una difusión pública para quien así desee conocerla.

---

[3] *Pueblo v. Ferrer Maldonado*, supra, pág. 995.

Por último, el Registro tiene el importante propósito de *divulgar* cierta *información* al público y, a su vez, *promover* la *seguridad* de la ciudadanía. Una persona podría utilizar la información contenida en el Registro a la hora de considerar, por ejemplo, los asuntos de su vida siguientes: dónde debe comprar o alquilar una residencia, o a cuáles parques recreacionales o escuelas debe llevar a sus hijos e hijas, entre varias otras. Esto, claro está, con la salvaguarda de que la ley *protege* a los ofensores sexuales obligados a registrarse contra cualquier ciudadano que intente herir, acosar o cometer algún delito contra ellos. Véase 4 LPRA sec. 536f. Una de las justificaciones de política pública para propagar la información contenida en el Registro, según nuestra Asamblea Legislativa, es que existe una probabilidad de reincidencia para personas convictas por delitos sexuales.[18]

La Ley Núm. 266-2004, según enmendada, no resulta excesiva puesto que la obligación de registrarse es proporcional al interés legítimo gubernamental de seguridad ciudadana. El interés del Estado, en garantizar la protección de los sectores más vulnerables ante la reinserción en la sociedad de las personas convictas por delitos de abuso sexual, tiene que prevalecer frente a cualquier incomodidad o estigma social que un ofensor sexual pueda sufrir. Esto, en atención a que el legislador tiene un interés particular en proteger a las víctimas de abuso sexual, en particular, los menores de edad. En la Exposición de Motivos de la Ley Núm. 243-2011, la Asamblea Legislativa hizo hincapié en que estas enmiendas buscaban, "brindar mayor protección y seguridad a los menores de edad en cuanto a la explotación sexual y crímenes violentos se refiere; promover la seguridad de los jóvenes; atacar y prevenir el abuso infantil y la pornografía infantil, entre otros asuntos [...]". Exposición de Motivos, Ley Núm. 243-2011 (2011 [Parte 3] Leyes de Puerto Rico 2788).[4]

Finalmente, el más Alto Foro resolvió que, la aplicación retroactiva de las enmiendas incorporadas en virtud de la Ley Núm. 243-2011 a la Ley Núm. 266-2004, **no violan la prohibición constitucional en contra de la aplicación de leyes *ex post facto*.** (*Énfasis suplido*). Añadió, además, que, "[e]sta ley, y sus más recientes enmiendas, es de carácter civil, no penal ni punitiva, y cumple cabalmente con la metodología adjudicativa adoptada en *Smith v. Doe*". *Íd.* pág. 999. El Tribunal Supremo, de igual manera concluyó que, "**[t]odas las disposiciones contenidas en las**

---

[4] *Íd.* pág. 997-998.

**enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva**, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular corresponde emplear el principio de favorabilidad, conforme a lo resuelto en *Pueblo v. Hernández García*, 186 DPR 656 (2012)". (*Énfasis suplido*). *Íd.*

## C. *Leyes ex post facto*

Según es sabido, el Art. II, sec. 12 de nuestra Constitución contiene una prohibición expresa sobre la aprobación de leyes *ex post facto*. Const. PR, LPRA, Tomo 1; *González v. ELA*, 167 DPR 400, 408 (2006). El Máximo Foro ha sido enfático en la existencia de cuatro (4) tipos de estatutos que consideran *ex post facto*, estos son las leyes que: "(1) criminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable." *Íd.*; *Pueblo v. Ferrer Maldonado*, supra, pág. 990. Véase, además *Pueblo en interés menor FRF*, 133 DPR 172 (1993). Esta cláusula constitucional, garantiza que los estatutos provean al ciudadano una notificación adecuada de aquella conducta prohibida y sobre las consecuencias penales que conlleva realizar tal conducta. *González v. ELA*, supra, pág. 408.

De igual manera, tiene como propósito [p]rohibir la aplicación retroactiva de una ley que agrave para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir con una sentencia o su extensión". *Pueblo v. Ferrer Maldonado*, supra, pág. 991, citando a E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, págs. 545–549.

Véase, además, L.E. Chiesa Aponte, *Derecho penal sustantivo*, 2da ed., San Juan, Pubs. JTS, 2013, págs. 16–17.    Por ende, la protección constitucional contra leyes *ex post facto* únicamente se activa cuando se pretende aplicar una ley penal de manera retroactiva. *Pueblo v. Ferrer Maldonado*, supra, pág. 991; *González v. ELA*, supra, págs. 409-410.  Es por lo que, como regla general, la Asamblea Legislativa no se encuentra impedida de aplicar retroactivamente leyes de carácter civil.  *Pueblo v. Ferrer Maldonado*, supra, pág. 991; *González v. ELA*, supra, págs. 410.

Luego de esbozar las normas jurídicas que enmarcan la controversia de autos, dispongamos de ésta según corresponde.

**III**

En su primer señalamiento de error, la parte peticionaria sostiene que, el foro *a quo* incidió al declarar No Ha Lugar la petición presentada sin haber celebrado vista y al haberle negado su día en corte.  Adelantamos que, no le asiste la razón.  Veamos.

Luego de examinar el expediente ante nuestra consideración, colegimos que, el debido proceso de ley de la parte peticionaria no fue vulnerado, pues esta tuvo oportunidad razonable y suficiente de exponer sus planteamientos mediante las mociones presentadas a lo largo del caso.  Por otro lado, la parte peticionaria no logró demostrar que, se le violentó el debido proceso de ley, pues conforme surge del expediente, fue notificada adecuadamente del proceso ante un juzgador imparcial, tuvo la oportunidad de exponer sus planteamientos mediante comparecencia escrita, tuvo asistencia de su representante legal y la decisión del foro primario se basó en el récord del caso[5].

---

[5] Véase: *Pueblo v. Pagán Rojas et al.*, 187 DPR 465 (2012); *Domínguez Castro v. ELA*, 178 DPR 1 (2010); *López Santos v. Asociación de Taxis de Cayey*, 142 DPR 109, 113-114 (1996); *Feliciano Figueroa v. Toste Piñero*, 134 DPR 909, 914-915 (1993).

Por encontrarse intrínsecamente relacionados, procedemos a discutir los señalamientos de error dos (2) al ocho (8) de forma conjunta.

En su segundo señalamiento de error, la parte peticionaria arguye que, el Tribunal de Primera Instancia incidió al declarar No Ha Lugar la petición presentada por el señor Otero Concepción y así, violentar las protecciones constitucionales federales contra castigos crueles e inusitados, y la violación a su intimidad.

Como tercer señalamiento de error, el señor Otero Concepción sostiene que, el foro de primera instancia erró al declarar No Ha Lugar su petición, y al hacer caso omiso a su deber ministerial sobre la protección de sus derechos, el debido proceso de ley que le cobija y los derechos constitucionales.

Mientras que, en el cuarto señalamiento de error, la parte peticionaria aduce que, la primera instancia judicial desacertó al determinar que la aplicación retroactiva de las disposiciones de la Ley Núm. 243-2011 es compulsoria, cuando, a su juicio, de esta se desprende que es discrecional.

En el quinto señalamiento de error, la parte peticionaria aduce que, el foro *a quo* se equivocó al denegar la *Petición*, sin tomar en consideración que el fin de la Ley Núm. 243-2011, *supra*, es el evitar la reincidencia.

Por otro lado, como sexto y séptimo señalamientos de error, el señor Otero Concepción sostiene que, el Tribunal de Primera Instancia incidió al declarar No Ha Lugar la *Petición*, y al determinar contrario a la intención legislativa de que la implementación de la Ley Núm. 243-2011, *supra*, no es una de carácter punitivo, de manera en que no ejerció la discreción concedida bajo el aludido estatuto sobre su aplicación retroactiva.

Finalmente, en su octavo y último señalamiento de error, la parte peticionaria sostiene que, el Tribunal de Primera Instancia

violentó el mandato constitucional de rehabilitación de las personas que han cometido un delito al declarar No Ha Lugar la *Petición*.

Adelantamos que, los errores antes señalados son inmeritorios. Veamos.

Según reseñáramos, el señor Otero Concepción fue sentenciado a cumplir dieciocho (18) años en una institución carcelaria, por haber cometido los delitos de tentativa de incesto, y violación en contra de una persona menor de edad. Posteriormente, comenzó a gozar del beneficio de libertad bajo palabra e inmediatamente fue inscrito en el Registro de Ofensores Sexuales conforme a las disposiciones de la Ley Núm. 266-2004, *supra*. Cabe destacar que, el señor Otero Concepción fue registrado como Ofensor Sexual Tipo III.

Más adelante, la parte peticionaria completó la totalidad de su condena y presentó la *Petición*, donde solicitó al foro de primera instancia que eliminara su nombre del Registro de Ofensores Sexuales y que se eliminara de su récord de antecedentes penales los delitos por los cuales había sido sentenciado. El Ministerio Público se opuso a tal petición ya que entendía que el señor Otero Concepción no cumplía con lo dispuesto por la Ley Núm. 266-2004, *supra*. Ello, debido a que el aludido estatuto establecía que, si la persona convicta era un Ofensor Sexual Tipo III debía permanecer de por vida inscrita en el Registro de Ofensores Sexuales.

Luego de varias incidencias procesales innecesarias pormenorizar, la primera instancia judicial emitió la *Resolución* cuya revisión nos ocupa. En virtud de esta declaró No Ha Lugar la *Petición* presentada por la parte peticionaria debido a que, el estado de derecho actual le imponía aplicar retroactivamente las enmiendas incorporadas a la Ley Núm. 266-2004, *supra*, mediante la Ley Núm. 243-2011, *supra*.

Conforme al derecho expuesto, en el caso de *Pueblo v. Ferrer Maldonado*, supra, el Tribunal Supremo tuvo que determinar si procedía la aplicación retroactiva de las enmiendas incorporadas a la Ley Núm. 266-2004 *supra*, mediante la Ley Núm. 243-2011, *supra.*

En el precitado caso, el Máximo Foro resolvió que, por disposición expresa de la Asamblea Legislativa, la Ley Núm. 266-2004, *supra*, es una ley civil, no penal y de carácter no punitivo. Consecuentemente, la aludida ley no cualifica bajo ninguno de los cuatro (4) tipos de estatutos que se consideran contrarios a nuestra cláusula constitucional *ex post facto*.[6] El más Alto Foro aplicó el análisis esbozado por el Tribunal Supremo de Estados Unidos en *Smith v. Doe*, supra. Razonó lo siguiente: en primer lugar, en nuestra jurisdicción el requisito de inscripción en el Registro de Ofensores Sexuales no ha sido considerada como una actuación de índole punitiva, puesto que su intención tanto a nivel estatal como federal es "*informar* al público y *servir* como un medio por el cual el Estado pueda velar por *la seguridad, protección y bienestar general*".[7] De igual manera, tampoco es una "medida de seguridad" conforme a los parámetros del Art. 91 del Código Penal. En segundo lugar, dispuso que, "nuestro ordenamiento no impone una incapacidad o restricción afirmativa alguna más allá de la obligación de inscribirse en el Registro y los trámites que conlleva actualizar la información allí contenida". Asimismo, que la exigencia de proveer la dirección residencial del ofensor, no ostenta efectos semejantes ni cercanos a la pena de encarcelamiento o alguno de los mecanismos de sentencia diferida.[8] En tercer lugar, según expresó el Tribunal Supremo, la Ley Núm. 266-2004, *supra*, aplica a una conducta ya

---

[6] *Pueblo v. Ferrer Maldonado*, supra, pág. 995.
[7] *Íd.* págs. 996-997.
[8] *Íd.*

considerada como un delito de abuso sexual; esto es, no penaliza una nueva conducta criminal. En cambio, reconoce únicamente aquellas conductas ya estatuidas.[9] Por último, indicó que, el Registro de Ofensores Sexuales tiene el importante propósito de "*divulgar* cierta *información* al público y, a su vez, *promover* la *seguridad* de la ciudadanía".[10]

Concluido el análisis, nuestra más Alta Curia estableció que, la Ley Núm. 266-2004, *supra*, no resulta excesiva en la manera en que, la obligación de registrarse es "proporcional al interés legítimo gubernamental de seguridad ciudadana".[11] Es por lo que, el Tribunal Supremo resolvió que, la aplicación retroactiva de las enmiendas incorporadas en virtud de la Ley Núm. 243-2011 a la Ley Núm. 266-2004, *supra*, **no violan la prohibición constitucional en contra de la aplicación de leyes *ex post facto*.** (*Énfasis suplido*). El más Alto Foro, de igual manera concluyó que, "[**t]odas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva**, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular corresponde emplear el principio de favorabilidad, conforme a lo resuelto en *Pueblo v. Hernández García*, 186 DPR 656 (2012)".[12] (*Énfasis suplido*).

Queda meridianamente claro que, los planteamientos esbozados por la parte peticionaria son inmeritorios, dado que, nuestro Tribunal Supremo resolvió que todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011, *supra*, aplican de forma retroactiva, así como que, ello no violenta la prohibición constitucional contra leyes *ex post facto*. En

---

[9] *Íd.*
[10] *Íd.*
[11] *Íd.*
[12] *Íd.*

el caso de epígrafe, el foro *a quo* no incidió al denegar la *Petición* presentada por la parte peticionaria. Puesto que, el señor Otero Concepción fue clasificado como un Ofensor Sexual Tipo III, y conforme a las disposiciones de Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, *supra*, deberá permanecer inscrito de por vida en el Registro de Ofensores Sexuales[13]. Cabe destacar que, al momento de incorporarse las enmiendas bajo la Ley Núm. 243-2011, *supra*, la parte peticionaria se encontraba en libertad bajo palabra, por tanto, indudablemente, le aplican tales enmiendas.

**VI**

Por los fundamentos antes expuestos, se expide el recurso de *certiorari* y se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[13] Art. 5 de la Ley Núm. 266-2004, *supra*; *Pueblo v. Ferrer Maldonado,* supra, pág. 984-985.